United States District Court
For the Northern District of California

1

2

3                      UNITED STATES DISTRICT COURT

4                    NORTHERN DISTRICT OF CALIFORNIA

5                             OAKLAND DIVISION

6

7    MARCO MARROQUIN,

8              Petitioner,                    No. C 07-6098 PJH (PR)

9      vs.                                    **ORDER DENYING
                                              HABEAS PETITION**
10   BEN CURRY,

11             Respondent.

12   _____/

13       This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.

14   The petition is directed to a denial of parole.  It originally contained six claims, but after the

15   court granted respondent's motion to dismiss it as mixed, petitioner amended the petition to

16   present only the exhausted issue, his contention that the denial of parole was not

17   supported by "some evidence."

18       The court ordered respondent to show cause on the merits of that issue.

19   Respondent filed an answer and the time for petitioner to file a traverse passed without his

20   filing one.  The United States Court of Appeals for the Ninth Circuit then decided *Hayward*

21   *v. Marshall*, 603 F.3d 546 (9th Cir. 2010), in which a number of important issues involving

22   parole habeas cases had been raised.  In consequence, the court ordered the parties to

23   provide supplemental briefs addressing the impact of *Hayward* on this case, which they

24   have done.

25       For the reasons set forth below, the petition will be denied.

26                              **BACKGROUND**

27       A Los Angeles County jury convicted petitioner of second-degree murder with use of

28   a gun.  He was sentenced to prison for fifteen years to life.  He began serving that sentence

United States District Court

For the Northern District of California

1    in December of 1993.  He alleges that he has exhausted these parole claims by way of

2    state habeas petitions.

3         On June 6, 2006, after a hearing before the Board of Parole Hearings ("Board"),

4    during which petitioner was represented and was given an opportunity to be heard, the

5    Board found petitioner unsuitable for parole.  Ans. at Ex. 1, Pt. 2-3 (transcript of parole

6    hearing, hereafter "Tr.") at 1-81.

7         The Board's Presiding Commissioner read the facts of the crime in the record.  It

8    was taken from a prior Board report.

9         Viewed in accordance with the usual rules on appeal, the evidence
     established that in August of 1991, the victim Luis Silva, and his girlfriend,
10   agreed to buy a car from Marroquin.  Silva drove the car for several days and
     after discovering that it had a lot of defects, he returned the car to Marroquin.
11   He did not want the car back and told Silva that he wanted $1,000.00 for the
     days the car was used.  Silva replied that if he had the money, he would pay
12   him for the car.  Marroquin told Silva that he would regret what he had done
     to him.

13

14        [¶]  On January 13th, 1992, in the city of Compton, Los Angeles
     County Sheriff's Department Deputies were flagged down by two men.  They
15   reported that an individual, later identified as Marroquin, had been shooting a
     gun.  Two men, who also witnessed the incident, directed LASD deputies to
16   where Marroquin was.  He was observed to be standing in front of a Toyota
     truck holding the hood open with a gun in his left hand.  He was ordered to
17   drop the gun.  Marroquin threw the gun into a vacant lot.  In the process of
     placing Marroquin in the patrol car, other witnesses approached the LASD
18   deputies stating that someone had been shot in the front of Villa Bajavita Bar.
     . . .

19        [¶]  LASD deputies observed the victim, a male, later identified as Luis
     Silva, lying on his back.  Upon closer observation, there appeared a gunshot
20   wound to the victim's left bicep.  The victim was bleeding slightly, and his
     jacket was stained with blood.  The victim was then transported to Long
21   Beach Memorial Hospital where he was pronounced dead on 1/14/92 at
     approximately 7:22 a.m.  Cause of death was listed as internal hemorrhage.
22
          [¶]  A witness who was selling hotdogs from a stand outside the bar
23   heard Marroquin swearing at Silva and saying that he wanted to kill him.  The
     witness did not see them fighting prior to Marroquin pulling out the gun.  Also
24   the witness saw no menacing gestures on the part of Silva, nor did she see
     anything in Silva's hand.  The witness did not see or hear Silva break a bottle
25   or use a bottle in a jabbing motion.

26   Tr. at 9-10.[1]

27   _____

28        [1]  In the original this is one long paragraph.  It has been divided where indicated by "[¶]"
     to make it easier to read.

2

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**I.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

3

United States District Court
For the Northern District of California

1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**II.    Issues Presented**

**A.    Respondent's Contentions**

In the answer, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence.  He says these contentions are made to preserve the issues for appeal.  As discussed further below, even after the en banc decision in *Hayward v. Marshall,* 603 F.3d 546 (9th Cir. 2010) (en banc), these contentions are incorrect.  *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020-21 (9th Cir. 2010) (California law creates a federal liberty interest in parole; that liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (same); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir. 2010) (same).

**B.    Petitioner's Claim**

As grounds for federal habeas relief, petitioner asserts that there was not "some evidence" to support the Board's decision.

United States District Court

For the Northern District of California

1    **1.    Impact of *Hayward***

2       As noted, the court permitted the parties to file supplemental briefs addressing the

3  impact on this case of the Ninth Circuit's decision in *Hayward v. Marshall*, 603 F.3d 546

4  (9th Cir. 2010) (en banc).  In his supplemental brief, respondent contends that after

5  *Hayward* it is clear that there is not federal habeas review of the sufficiency of the evidence

6  to deny parole.  Ninth Circuit cases subsequent to the filing of the brief, however, establish

7  that this is incorrect.

8       *Hayward* did hold that there is no constitutional right to "release on parole, or to

9  release in the absence of some evidence of future dangerousness," arising directly from the

10  Due Process Clause of the federal constitution; instead, any such right "has to arise from

11  substantive state law creating a right to release."  *Hayward*, 603 F.3d at 555.  The court

12  overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of Prison*

13  *Terms*, 461 F.3d 1123 (9th Cir. 2006); and *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), "to

14  the extent they might be read to imply that there is a federal constitutional right regardless

15  of whether state law entitles the prisoner to release . . . ."  *Hayward*, 603 F.3d at 556.  All

16  three of those cases had discussed the "some evidence" requirement, but in all three it was

17  clear that the requirement stemmed from a liberty interest created by state law; that portion

18  of the cases, therefore, was not overruled by *Hayward*.  *See Biggs*, 334 F.3d at 914-15;

19  *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-51; *see also Cooke v. Solis*, 606 F.3d

20  1206, 1213-14 (9th Cir. 2010) (post-*Hayward* case; noting that California law gives rise to a

21  liberty interest in parole).  However, all three also contained references in dicta to the

22  possibility that "[a] continued reliance in the future on an unchanging factor, the

23  circumstances of the offense and conduct prior to imprisonment, [would] run[] contrary to

24  the rehabilitation goals espoused by the prison system and could result in a due process

25  violation."  *Biggs*, 334 F.3d at 916-17; *see also Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at

26  853-54.  It appears that this possibility – referred to below as a "*Biggs* claim" – is the only

27  thing that was "overruled" by *Hayward*.

28  ///

United States District Court

For the Northern District of California

1       Aside from its holding that there could be no *Biggs* claim arising directly from the

2 Due Process Clause of the Constitution, *Hayward* has had little effect.  The Ninth Circuit

3 still recognizes that California law gives rise to a liberty interest in parole.  *Pirtle*, 611 F.3d

4 at 1020-21; *Cooke*, 606 F.3d at 1213-14; *Pearson*, 606 F.3d at 610-11.  Under California

5 law, "some evidence" of current dangerousness is required in order to deny parole.

6 *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal.4th 1181, 1205-06 (2008), and *In*

7 *re Shaputis*, 44 Cal.4th 1241 (2008)).  "California's 'some evidence' requirement is a

8 component of the liberty interest created by the parole system of that state."  *Cooke*, 606

9 F.3d at 1213.  A federal court considering a "some evidence" claim directed to a parole

10 denial thus must determine whether there was "some evidence" of current dangerousness

11 to support the parole board's decision; if not, the prisoner's due process rights were

12 violated.  This was also true prior to *Hayward*, although now the rationale is that the court is

13 applying California's "some evidence" rule as a component of the required federal due

14 process.  *See Pirtle*, 611 F.3d at 1020-21; *Cooke*, 606 F.3d at 1213-14; *Pearson*, 606 F.3d

15 at 610-11.  Respondent's arguments regarding the impact of *Hayward* are rejected.

16         **2.**     **Analysis**

17       In *Hayward* the court held that a federal district court reviewing a California parole

18 decision "must determine 'whether the California judicial decision approving the governor's

19 [or the Board's] decision rejecting parole was an 'unreasonable application' of the California

20 'some evidence' requirement, or was 'based on an unreasonable determination of the facts

21 in light of the evidence.'"  *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. §

22 2254(d)(1)-(2)).

23       When a federal court considers a habeas case directed to a parole decision, the

24 "necessary subsidiary findings" and the "ultimate 'some evidence' findings" by the state

25 courts are factual findings – and thus are reviewed by the federal court under 28 U.S.C. §

26 2254(d)(2) for whether the decision was "based on an unreasonable determination of the

27 facts in light of the evidence."  *Id.* (citing *Hayward*, 603 F.3d at 563).

28 ///

**United States District Court**
For the Northern District of California

1   The California Supreme Court explained how the state "some evidence" requirement

2   should be applied in the important and relatively recent case of *In re Lawrence*.  That

3   requirement was summarized in *Hayward* as follows:

4

5   > As a matter of California law, 'the paramount consideration for both the
>   Board and the Governor under the governing statutes is whether the inmate

6   > currently poses a threat to public safety.'  There must be 'some evidence' of
>   such a threat, and an aggravated offense 'does not, in every case, provide

7   > evidence that the inmate is a current threat to public safety.'  The prisoner's
>   aggravated offense does not establish current dangerousness 'unless the

8   > record also establishes that something in the prisoner's pre- or post-
>   incarceration history, or his or her current demeanor and mental state'

9   > supports the inference of dangerousness.  Thus, in California, the offense of
>   conviction may be considered, but the consideration must address the
>   determining factor, 'a current threat to public safety.'

10

11  *Id.* at 562 (quoting *In re Lawrence*, 44 Cal. 4th. at 1191, 1209-15); see also *Cooke*, 606

12  F.3d at 1214 (describing California's "some evidence" requirement).

13  The circumstances of the offense, in which a person was murdered because of a

14  minor dispute over the sale of a car, was one basis for the Board's conclusion that

15  petitioner would be a danger to society if paroled.  Tr. 73-74.  At the time of the hearing in

16  2006, petitioner was approximately fifty years old and had served a bit more than thirteen

17  years on his sentence of fifteen years to life.  It is apparent from petitioner's version of

18  events that he has not come to terms with his responsibility for the killing, *id.* 11-14, which

19  meets the *Lawrence* requirement that something in the inmate's current demeanor or

20  mental state support the inference of dangerousness that arises from the nature of the

21  offense.  *See Lawrence*, 44 Cal. 4th at 1214.  The court concludes that despite the

22  passage of time, the circumstances of the offense constitute "some evidence" to support

23  the denial.  In addition, as the Board noted, petitioner had not participated sufficiently in

24  self-help programs, *id.* at 74, and had not developed employment plans if he were to be

25  paroled in the United States rather than deported, *id.* at 44, 75.

26  In light of this evidence, the state courts' rejections of the claim were not "based on []

27  unreasonable determination[s] of the facts in light of the evidence."  *See* 28 U.S.C. §

28  2254(d)(2).  As this is the only remaining claim in the petition, the petition must be denied.

1   *See Cooke*, 606 F.3d at 1215 (federal habeas court considering California parole "some

2   evidence" claim must apply § 2254(d)(2)); *Hayward*, 603 F.3d at 562-63 (requiring

3   application of California's "some evidence" standard).

### CONCLUSION

5   The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

6   **IT IS SO ORDERED.**

7   Dated:  October 25, 2010.

_____
PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.07\MARROQUIN6098.RUL.wpd

**United States District Court**
For the Northern District of California